IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RUSSELL E. HENDERSON,                           CV 08-6194-MA

       Plaintiff,                               OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

KATHRYN TASSINARI
MARK MANNING
HARDER,WELLS,BARON & MANNING, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

       Attorneys for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

DAVID MORADO
Regional Chief Counsel
DAVID M. BLUME
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2212

       Attorneys for Defendant

MARSH, Judge.

      Plaintiff Russell E. Henderson seeks judicial review of the Commissioner's final decision denying his May 22, 2002, and July 28, 2006, concurrent applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

      Plaintiff alleges he has been disabled since October 15, 2000,[1] because of multiple impairments, including a bad knee and ankle, a learning disorder with limited intellectual functioning, alcoholism, sleep apnea, narcolepsy, anxiety, weakness and pain in his right shoulder and left arm, headaches with blurred vision, memory problems, and back pain.  His claim was denied initially and on reconsideration.

---

    [1] Plaintiff subsequently alleged a disability onset date of July 18, 1997, based on prior applications for disability benefits.  The ALJ determined that previous denials of the earlier applications were binding and had preclusive effect. Plaintiff does not seek review of that determination.

2  - OPINION AND ORDER

On July 13, 2004, the Administrative Law Judge (ALJ) held an evidentiary hearing on plaintiff's May 2002 application, and on September 20, 2004, issued a decision that plaintiff was not disabled.  On March 27, 2006, the Appeals Council denied plaintiff's request for further review.  The ALJ's decision, therefore, was the Commissioner's final decision for purposes of judicial review.

On May 12, 2006, plaintiff filed an action in this court, Henderson v. Commissioner, 06-CV-6107-KI, seeking review of the Commissioner's final decision.  On February 13, 2007, based on the parties' stipulation, the court remanded the matter for further proceedings to afford the Commissioner the opportunity to reassess the medical and lay witness evidence, obtain further expert medical evidence, reevaluate the severity of plaintiff's claimed impairments singly and in combination, with and without considering his alcohol use, obtain additional expert testimony to clarify the severity of plaintiff's mental impairments, with and without considering his alcohol use, and, based on such additional information, reassess plaintiff's residual functional capacity and obtain addition testimony from a vocational expert.

On December 10, 2007, the ALJ held an evidentiary hearing on remand, and on February 29, 2008, issued a second decision that plaintiff was not disabled.  The Appeals Council declined to review the ALJ's final decision and, therefore, that decision

3 - OPINION AND ORDER

became the final decision of the Commissioner for purposes of judicial review.

Plaintiff now seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

<u>**THE ALJ'S FINDINGS**</u>

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  <u>Bowen v. Yuckert</u>, 482 U.S.137, 140 (1987).  <u>See also</u> 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found the work plaintiff has performed since April 19, 1998, does not constitute substantial gainful activity.

At Step Two, the ALJ found that if plaintiff's alcoholism is considered, he suffers from severe impairments that include dysthymia disorder, substance addiction, episodic mood disorder, intermittent personality disorder, and borderline intellectual functioning.  The ALJ found he has no concurrent adaptive functioning deficits when his alcoholism is not considered. 20 C.F.R. §404.1520(c) and §416.920(c)(an impairment or combination of impairments is severe if it significantly limits

4  - OPINION AND ORDER

an individual's physical or mental ability to do basic work
activities).

When his substance addiction is not considered, plaintiff
has severe impairments of lifelong dysthymia disorder and
personality disorder with problems in interpersonal functioning,
and borderline intelligence with no coexisting adaptive
functioning deficits. He has no physical impairments in the
absence of substance abuse.

At Step Three, the ALJ found that when plaintiff's
alcoholism is considered, his impairments of dysthymia, episodic
mood disorder, personality disorder, and borderline IQ meet the
requirements of a Listed Impairment. When plaintiff's alcoholism
is not taken into account, these impairments do not meet or equal
the requirements of any Listed Impairment.

The ALJ found that if plaintiff stopped drinking, he would
have no physical impairments or exertional limitations. His
borderline intelligence, dysthymia disorder, and personality
disorders, however, would limit his mental residual functional
capacity and preclude him from performing work involving detailed
instructions and interaction with the general public. Moreover,
he could only have occasional interaction with co-workers.

At Step Four, the ALJ found that if plaintiff stopped
drinking, he would be unable to perform his past relevant work
as a forklift or farm-truck driver, lattice production worker,

floor installer, gas station attendant, dryer feeder, dish washer, general laborer, and seed warehouseman.

At Step Five, the ALJ found that if plaintiff stopped drinking, he would be able to perform a significant number of other jobs that exist in the national economy.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied his claims for DI and SSI benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

6  - OPINION AND ORDER

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

The issues are whether the ALJ erred in failing (1) to give clear and convincing reasons for rejecting plaintiff's testimony, (2) to give clear and convincing reasons for rejecting the

medical opinions of examining psychologists, (3) to give germane reasons for rejecting the lay witness testimony of plaintiff's special education teachers, and (4) to properly assess plaintiff's exertional limitations.

<u>**PLAINTIFF'S TESTIMONY/EVIDENCE**</u>

This evidence is drawn from plaintiff's hearing testimony conducted in July 2004 and December 2007, his Armed Services DD Form 214, and work history reports.

Plaintiff was 51 years old on the date of the latter hearing. He has a high school diploma and participated in special education classes. He is able to read at the third grade level. He lost his drivers license in 1997 because of alcohol-related problems and rides a bicycle for transportation. He now lives with his parents although he lived on his own for five months in 2002-2003. He gets along with friends unless he has been drinking.

a.    <u>**Work History**</u>.

Plaintiff served in the United States Navy from April 1979 to January 1980 when he was generally discharged under honorable conditions because of a personality disorder. While he was in the Navy, he trained as an electrical/mechanical equipment repairman. He did not get along with officers and shipmates.

After his service in the Navy, he worked as a warehouseman,

forklift driver, lattice producer, farm truck driver, floor installer, service station attendant, lumber dryer/feeder, general laborer, dishwasher, and mill worker.  Plaintiff worked for several years at Monaco Coach but he quit the job because of ankle pain.  He continued to have difficulty getting along with supervisors.

Plaintiff now mows lawns for which he is paid about $10 per lawn.  He spends most of the money he earns on beer.

**b.    Medical Issues.**

Plaintiff suffers from sleep apnea.  He has a CPAP machine to help him sleep but does not use it sometimes because it pinches his nose.  His hands fall asleep.  He takes Paxil to control his stress and also takes blood pressure medication.

Plaintiff has tried to stop drinking and has entered treatment programs.  He has been "kicked out" of these treatment programs because he continued to drink.  His only physical problem is that his ankles "have never been exactly perfect," and he often twists them when he steps on a stone while walking.

## LAY WITNESS EVIDENCE

**a.    Mary Henderson - Mother.**

Mary Henderson, testified that plaintiff has lived with her on and off all his life and continuously in the last three years. He helps his father split and stack wood.  He has a drinking problem.

9  - OPINION AND ORDER

Plaintiff had difficulties at school and his mother was frequently called by teachers regarding behavioral issues. His anger has increased over the years, which his mother attributes to the friends with whom he associates. He "seems to use his alcohol as a crutch," and issues between him and his father have created problems in the home. Plaintiff is prescribed medication that helps his behavior, but he often does not take it.

Plaintiff had carpal tunnel surgery in 1991 and was able to work "some" after that.

**b.    <u>Joan Durbin</u>.**

Durbin taught plaintiff in an educable mentally retarded class in 1965-66. She states he was a charming but volatile "at risk child" at that time who had an Attention Deficit Disorder with hyperactivity.

**c.    <u>Carol Williams</u>.**

Williams taught plaintiff in a special education class from 1968-1971. His IQ was in the high average range (71-75) for that class. His reading level probably did not get past the 5th grade level, and his math skills were at no more than a 4th grade level. He was a charming boy but he was the "biggest discipline problem" in the class with a "hair trigger temper" and "almost no impulse control." He had an attention deficit disorder with a "huge hyperactivity" component. She opined that "with monitoring and structure," he "could function in some capacity."

10 - OPINION AND ORDER

d.    **Jack Adams**.

Adams is a retired special education teacher who taught plaintiff.  He opined that plaintiff "never progressed enough to make decisions that would enable him to live independently" and he shows "no ability to hold down a job" or manage money.

### RELEVANT MEDICAL EVIDENCE

a.    **Medical/Mental Health Treatment**.

Sacred Heart Medical Center.

Plaintiff was diagnosed as suffering from sleep apnea in 2002.  His sleep pattern improved when he used a CPAP mask.

In January 2006, plaintiff was treated in the Emergency Room after he complained of chest pains.  He was diagnosed with acute atypical chest pain with no acute cardiac event.  Outpatient follow-up was recommended.

Veterans Administration Hospital-Roseburg.

In 1997, plaintiff was diagnosed as suffering from alcoholism, depression, and right knee pain from an old injury. He was assigned GAF scores on separate occasions of 30 (inability to function in almost all areas) and 45 (serious impairment in social, occupational, or school functioning).  Plaintiff gave a history of having received four DUII's, two assault convictions, and one automobile theft conviction.  He had participated in two prior court-mandated alcohol treatment programs.  He has a history of bilateral carpal tunnel surgery.

In November 1997, plaintiff was diagnosed with alcohol and cannabis dependence, borderline intellectual functioning with a severe impairment in practical judgment, and Dysthymic Disorder. His GAF at that time was 40 (major impairment in work, school, or family relations, judgment, thinking, or mood).

In December 1999, plaintiff was "erratic" with his medications and use of alcohol.

In March 2000, plaintiff's GAF was 50 (serious impairment in social, occupational, or school functioning).

In March 2001, plaintiff was discharged from a VA treatment program for non-compliance with treatment recommendations.

Robert Tearse, M.D. - Neurologist.

Dr. Tearse began treating plaintiff for sleep apnea in May 2000.  He noted plaintiff used his CPAP mask only occasionally, and he recommended that plaintiff lose weight.  Plaintiff was "dissatisfied" with both recommendations.

In February 2004, Dr. Tearse again noted plaintiff had "poor compliance" in using a CPAP mask to improve the quality of his sleep.  In June 2005, plaintiff's "poor compliance" continued. In November 2007, Dr. Tearse noted plaintiff stopped using his CPAP "many months ago."

Willamette Family Treatment Services, Inc.

In March-April 2002, plaintiff was admitted to a residential treatment facility with a diagnosis of cannabis dependency and

12 - OPINION AND ORDER

alcohol dependency over a period of 30 years.  On discharge, plaintiff's prognosis was poor because of his history of relapse, low sense of self-worth, unemployment, and dependence on his parents for financial and emotional support.

Junction City Medical Center.

In December 2002, plaintiff was treated for persistent left ankle and left sacroiliac pain.  X-rays did not reveal any abnormalities.

In January 2003, plaintiff was treated for abdominal pain, which was thought to be from a kidney stone.

In February 2003, plaintiff complained of left shoulder pain.  He had been "very active" mowing grass, chopping wood, and lifting hay.

In September 2003, plaintiff complained of depression.  He was encouraged to stop drinking.

In October 2003, plaintiff had persistent vomiting, and was diagnosed with probable viral gastroenteritis.

In November 2003, an abcess on one of plaintiff's toes on his left foot was drained.

In January 2004, plaintiff complained of being depressed. He was continued on Paxil.

In May 2005, plaintiff was treated for daytime sleepiness.

In June 2005, plaintiff was treated for groin pain and for a healing scab on his back, which was thought to be related to a

13 - OPINION AND ORDER

superficial stab wound he received while he was drunk, although plaintiff could not recall any altercation.

Later that month, plaintiff continued to complain of groin pain and right leg and foot pain that occurred after he fell while lifting wood off a woodpile. He had good range of motion without pain in his ankle. He was advised to return if the leg and foot pain continued. An ultra sound reading of his testicles revealed epididymal cysts on his testicles causing him pain.

In September 2005, plaintiff complained of neck and upper back pain. He also complained of vomiting blood. His back pain was probably the result of a muscle spasm caused by his vomiting.

In January 2006, plaintiff complained of left-side chest pain radiating to the left arm and abdominal pain. He had been drinking the night before. Tests performed while plaintiff was at rest and exercising did not show abnormal blood circulation or heart disease. His abdominal pain was related to gastritis. Plaintiff was counseled to stop drinking.

In April 2006, plaintiff was vomiting blood and had bloody stools. He expressed a strong desire to quit drinking. He was told to check back in one-two weeks after he has stopped drinking. On follow-up, plaintiff had not stopped drinking.

In July 2006, plaintiff developed chest pain while he was incarcerated. He was medically cleared to complete his incarceration.

14 - OPINION AND ORDER

In August 2006, plaintiff complained of left shoulder pain.

In early December 2006, plaintiff complained again of left shoulder and arm pain with some numbness.  He was not in acute distress.

In late December 2006, plaintiff complained of some ongoing left shoulder and right hip pain.  He had not had alcohol for 26 days.

In January 2007, plaintiff stated he had relapsed and used alcohol over the past few days, partly due to mood difficulties. He was diagnosed as having a major depressive/generalized anxiety disorder.

In February 2007, plaintiff's anxiety had lessened but he continued to drink once or twice a week.

b.    **Medical/Mental Health Examinations.**

John R. Finney, Ph.D - Clinical Psychologist.

In November 1997, Dr. Finney evaluated plaintiff's mental status on behalf of the VA.  Dr. Finney opined plaintiff does not have a personality disorder.  An MMPI reflected invalid test scores based on "overendorsement of invalid symptoms," probably resulting from a "lack of common sense" that caused plaintiff "to misinterpret many questions."  He concluded that plaintiff's social and occupational impairment "are 90% due to his problems in cognitive processing" and that "10% of his dysfunction can be attributed, currently to his chemical dependency."

William M. McConochie, Ph.D - Psychologist.

In July 2002, Dr. McConochie performed a psychodiagnostic evaluation on behalf of DDS.  He diagnosed polysubstance abuse, primarily with alcohol, and borderline intellectual functioning. Plaintiff complained of weak ankles and wrist problems, but did not have difficulty using his hands or walking.  His prognosis was poor because he continued to drink even though he would get into trouble in public.

Teresa Dobles, Psy.D - Psychologist.

In January 2003, Dr. Dobles performed a comprehensive psychological and neuropsychological evaluation of plaintiff on behalf of DDS.  Plaintiff's full scale IQ score was 67, in the extremely low range of intellectual functioning, falling into the mildly mentally retarded range with significant neuropsychological dysfunction.  He had significant variability in attention and memory.  He was assigned a GAF score of 41 (serious impairment in social, occupational, or school functioning).  Dr. Dobles opined plaintiff might be "successful in a sheltered vocational setting."

G. William Salbador, M.D. - Adult Psychiatry.

In September 2006, Dr. Salbador examined plaintiff on behalf of Disability Determination Services (DDS).  Plaintiff was cooperative during the examination with no evidence, for the most

part, of hostility, guarding, or defensiveness.  He was tired and somewhat irritable.

Plaintiff did not minimize "a significant alcohol dependence problem."  Dr. Salbador opined that although plaintiff complained of anger, mood swings, and depression, it "is very difficult if not impossible to diagnose an independent mood disorder" while he continues to drink.  Based on plaintiff's symptoms, Dr. Salbador opined that it "appears" plaintiff has "obstructive sleep apnea."  Plaintiff's prognosis was "guarded" but he had "potential" if he received "comprehensive treatment for his substance abuse" and "probable underlying mental health issues."

Kurt Brewster, M.D. - Internal Medicine.

In November 2006, Dr. Brewster examined plaintiff on behalf of Disability Determination Services (DDS).  He noted plaintiff was able to sit for 20 minutes without changing positions, and transferred on and off the examination table without difficulty. Dr. Brewster found no lower extremity weakness, no atrophy in the thigh or forearm, and his range of motion was generally well-preserved, particularly in the right shoulder.  Sensory examination of the upper and lower extremities was normal. There were minimal limitations in plaintiff's ability to walk or stand.

Dr. Brewster concluded plaintiff is able to walk/stand for six hours in an eight-hour workday with a 15 minute break every

17 - OPINION AND ORDER

two hours, and he had no sitting or weight bearing limitations. He is able to lift and carry "frequently/occasionally" with "occasional restrictions in stooping, reaching, grasping, pulling." Nevertheless, plaintiff's "overall examination was normal." He has no fine or gross motor deficits and no environmental restrictions.

c.    **Medical/Mental Health Consultations**.

    Richard Alley, M.D. - Family Practice.

    In November 2006, Dr. Alley reviewed plaintiff's medical records and concluded there was minimal objective evidence to support the claimed severity of plaintiff's physical impairments. Dr. Alley opined that plaintiff's complaints of pain, migraines, fatigue, sleep apnea, chest pain do not support any severe functional limitations.

    Neal E. Berner, M.D.

    In January 2007, Dr. Berner reviewed medical and non-medical records and concluded plaintiff's description of his limitations was "partially credible," but objective medical finding did not support any functional limitations.

    Bill Hennings, Ph.D. - Psychologist.
    Dorothy Anderson, Ph.D. - Psychologist.

    Dr. Hennings reviewed plaintiff's medical records and opined that he was moderately limited in understanding, remembering, and carrying out detailed instructions, moderately limited in

interacting appropriately with the general public and getting
along with co-workers, and moderately limited in setting
realistic goals or making plans independently of others.

Dr. Anderson supported Dr. Hennings' conclusions.

John Crossen, Ph.D. - Psychologist.

Dr. Crossen reviewed plaintiff's medical records and
testified at the second hearing in this matter.  He opined that
substance abuse was the predominant medical condition that was
supported by the record.  He also concluded that a diagnosis of
Dysthymia is "justified."  Dr. Crossen stated there was no reason
for plaintiff's IQ score to fall below the 70's or 80's absent
lack of motivation or effort.  Dr. Crossen opined plaintiff had
significant limitations when his alcohol abuse is considered.
Without alcohol, plaintiff would have mild restrictions in
activities of daily living, moderate difficulties in social
functioning, and mild-to-moderate difficulties in maintaining
concentration and pace depending on the nature of the tasks he
was assigned.  Dr. Crossen also opined that plaintiff had a life-
long IQ equivalent of borderline intelligence.   Moreover, his
difficulties in interpersonal relationships resulted from a
personality disorder that was "not that big of a problem" unless
it was "switched on by his alcohol abuse."  The record reflects
plaintiff's problems at work and in his daily activities are
related to his alcohol abuse.

19 - OPINION AND ORDER

## ANALYSIS

**a.    Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ on remand failed to give clear and convincing reasons for not crediting his testimony regarding the severity of his impairments.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  <u>See also</u> <u>Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity.  <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms.  <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  <u>See also</u> <u>Smolen</u>, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the

claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here there is no evidence of malingering. The ALJ also credited some part of plaintiff's testimony relating to the yard work he performs and his mode of transportation, i.e., riding a bicycle with a trailer hitched to it to and from his jobs. The ALJ also noted, however, that plaintiff failed to report "his ongoing sustained employment." She also observed there was "not enough objective evidence and opinion to support [plaintiff's] related allegations" regarding physical impairments. The ALJ noted there is substantial evidence that plaintiff suffers from sleep apnea but, at the same time, noted the overwhelming evidence that plaintiff has not complied with prescribed treatments to improved his sleep pattern. The ALJ ultimately gave plaintiff's allegations of severe physical impairments little weight because of his "inconsistencies in his testimony" and his "ongoing arduous activities" despite the alleged physical impairments.

On the record as a whole, I conclude the ALJ gave clear and

convincing reasons for not entirely crediting plaintiff's testimony regarding the severity of his impairments.

**b.    Rejection of Lay Witness Evidence.**

Plaintiff contends the ALJ failed to consider the lay witness evidence submitted by Joan Durbin, Carol Williams, and Jack Adams.

Lay witness evidence of a claimant's symptoms "is competent evidence" an ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

<u>Joan Durbin; Carol Williams</u>.

The ALJ did not specifically address the lay evidence offered by plaintiff's special education teachers, Joan Durbin and Carol Williams, who knew plaintiff 35-40 years earlier and wrote that he suffered from attention deficit disorder as a child.

I conclude the ALJ's failure to address the evidence submitted by Durbin and Williams was harmless because those teachers did not indicate they had any ongoing contact with plaintiff for the past 35-40 years, during which plaintiff was, in fact, able to engage in substantial gainful activity. Instead, the ALJ credited Dr. Crossen's medical opinion that

the medical records do not support a diagnosis of Attention
Deficit Disorder.  <u>See</u> <u>Stout v. Commissioner</u>, 454 F.3d 1050,
1056 (9th Cir. 2006)(failure to discuss lay witness testimony is
error unless "no reasonable ALJ, when fully crediting the
testimony, could have reached a different disability
determination.").  On the record in this case, I conclude a
reasonable ALJ could not have reached a different disability
determination even if this lay witness evidence was considered
and fully credited.

Jack Adams.

Adams was also a special education teacher who taught
plaintiff.  He has knowledge of plaintiff's activities since his
schooldays, and specifically refers to plaintiff's "drinking
problem and zero ability to handle finances."  He notes plaintiff
has had difficulty holding down a job "and his choice of friends
usually center on those who will relieve him of any money he
might have."  He opined that plaintiff "never progressed enough
to make decisions that would enable him to live independently."

The ALJ considered Adams' evidence but rejected his opinion
that plaintiff had shown no ability to hold down a job because
plaintiff's prior work history as an adult was to the contrary.
Moreover, the ALJ noted that Adams' present-day concerns about
plaintiff focused on the effects of his drinking.

On this record, I conclude the ALJ gave germane reasons for not crediting Adams' lay opinion regarding plaintiff's ability to engage in substantial gainful activity.

**c.   Rejection of Medical Opinions.**

The opinions of treating physicians should be credited as true if the ALJ fails to provide clear and convincing reasons for rejecting them.   See Smolen v. Chater, 80 F.3d 1273, 1992 (9th Cir. 1996).

Plaintiff contends the ALJ improperly rejected the opinions of psychologists, Dr. Finney and Dr. Dobles, each of whom examined plaintiff once, in 1997 and 2003, respectively.

Dr. Finney.

The ALJ rejected Dr. Finney's 1997 opinion that plaintiff's lack of common sense accounted for 90% and his alcoholism accounted for only 10% of his failure to hold a job or live alone successfully.   The ALJ explained that Dr. Finney's opinion was inconsistent with plaintiff's past work history and testimony, which reflected he was able to work full-time for two years during two separate time-frames for two separate employers. In addition, although the ALJ did not mention Dr. Finney's reference to plaintiff's lack of common sense, the ALJ found plaintiff's borderline function was a severe impairment and took it into account in his residual function capacity determination

that plaintiff could perform simple tasks involving unskilled work.  The ALJ also reasoned that Dr. Finney relied, in large part, on plaintiff's self-assessment of his limitations, which the ALJ found not to be credible.

Dr. Dobles.

The ALJ rejected Dr. Dobles' 2003 opinion that plaintiff was mildly mentally retarded and might be able to work in a "sheltered vocational setting."  The ALJ noted Dr. Dobles' opinion that plaintiff was mildly mentally retarded was an "isolated opinion," and that Dr. Crossen's opinion that plaintiff had "borderline intelligence" was more persuasive.  The ALJ also reasoned that Dr. Dobles was misled by plaintiff's self-described work history, in which he indicated he had "worked at a variety of low level jobs for short periods of time."  The ALJ found Dr. Crossen's opinion of plaintiff's work capacity more persuasive than Dr. Dobles' opinion because it was based on the entire record, including plaintiff's work history and relevant medical records, which reflected plaintiff was for a substantial period of time able to live independently, perform routine acts of daily living, and function socially when he was not drinking.

**d.    Inadequate Assessment of Residual Functional Capacity.**

Plaintiff contends the ALJ erred in failing to consider plaintiff's diagnosis of sleep apnea with day-time sleepiness, and occasional restrictions of stooping, reaching, grasping, and

25 - OPINION AND ORDER

pulling, in her assessment of plaintiff's residual functional capacity.  I disagree.

The ALJ acknowledged plaintiff's diagnosis of sleep apnea, but did not include it in his assessment because plaintiff was provided with a CPAP machine that demonstrably improved his sleep when he used it.  Plaintiff, however, was "noncompliant with CPAP use, at times, not using it for 'many months.'"  In addition, the ALJ appropriately did not include any stooping, reaching, grasping, or pulling restrictions because plaintiff demonstrated the ability to perform strenuous chores such as chopping wood, lifting hay, and yard maintenance, on an ongoing basis.

On this record, I conclude the ALJ did not inadequately assess plaintiff's residual functional capacity.

**e.**    **Summary.**

The record as a whole demonstrates that the Commissioner met the ultimate goal of the remand order, which was to determine to what extent plaintiff's ability to engage in substantial gainful activity was impacted by his substance abuse or by his other alleged physical and mental impairments.  I find that the evidence on remand reflects overwhelmingly that the most substantial hurdle plaintiff faces in his ability to engage in substantial gainful activity is his continued use of alcohol.

## <u>CONCLUSION</u>

For all the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 17 day of July, 2009.


                              /s/  Garr M. King
                    for  MALCOLM F. MARSH
                         United States District Judge

27 - OPINION AND ORDER